1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

# Jan 27, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

CARLA D.,

                                    Plaintiff,

    v.

KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

                                    Defendant.

NO:  2:20-CV-00361-LRS

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

    This case addresses both a constitutional challenge and a substantive

challenge to the ALJ's decision denying Plaintiff's application for Disability

Insurance Benefits (DIB).  Plaintiff's constitutional challenge asks whether an

unconstitutional statutory removal restriction as to the Commissioner of Social

Security renders the decisions of the Administrative Law Judges void.  This Court

finds that, absent evidence of compensable harm to Plaintiff, the unconstitutional

statutory removal restriction does not provide retrospective relief.  Since Plaintiff's

constitutional challenge provides no relief, the Court reviewed Plaintiff's

ORDER ~ 1

substantive challenge to the ALJ's decision and found it also does not provide

relief.  Therefore, the ALJ's decision is affirmed.

## CASE HISTORY

Plaintiff Carla D.[1] protectively filed an application for DIB on September

18, 2017, Tr. 91, alleging an onset date of April 1, 2016, Tr. 217, due to chronic

back pain, lower back pain, hip bone impairment, depression, migraines, and high

blood pressure, Tr. 235.  Plaintiff's applications were denied initially, Tr. 122-24,

and upon reconsideration, Tr. 128-34.  A hearing before Administrative Law Judge

Laura Valente ("ALJ") was conducted on December 17, 2019.  Tr. 39-90.  Plaintiff

was represented by counsel and testified at the hearing.  *Id*.  The ALJ also took the

testimony of vocational expert Alison Baldwin.  *Id*.  The ALJ entered an

unfavorable decision on January 9, 2020.  Tr. 15-33.  The Appeals Council denied

review on August 3, 2020.  Tr. 1-6.  Therefore, the ALJ's January 9, 2020 decision

became the final decision of the Commissioner.  The matter is now before this

Court pursuant to 42 U.S.C. § 405(g).  ECF No. 1.

The parties filed cross motions for summary judgement.  ECF Nos. 15, 16.

In her reply briefing, Plaintiff initially raised a constitutional challenge to the

Commissioner's appointment citing a Memorandum Opinion by the Office of

---

[1]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's

first name and last initial, and, subsequently, Plaintiff's first name only, throughout

this decision.

ORDER ~ 2

Legal Counsel filed after her motion for summary judgement was filed.  ECF No. 17.  Based on the timing of the Memorandum Opinion of the Office of Legal Counsel, this Court issued an order for additional briefing on the constitutional challenge, ECF No. 19, which the parties completed, ECF Nos. 22, 25.

The Court has reviewed the administrative record, the parties' initial and supplemental briefing, and is fully informed.  For reasons discussed below, the Court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 16, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF 15.

## CONSTITUTIONAL CHALLENGE

As an initial matter, Plaintiff challenges the authority of the ALJ to enter a decision regarding Plaintiff's application.  Plaintiff alleges that the President's authority to remove the Presidentially-appointed, Senate-confirmed Commissioner without good cause under 42 U.S.C. § 902(a)(3) violates that separation of powers provision of Article II.  She asserts that this results in an unconstitutional appointment of the Commissioner and, because of this unconstitutional appointment, the ALJ lacked authority to render a decision on Plaintiff's application for benefits.  ECF No. 17 at 4-8.

Plaintiff's argument is premised on two recent Supreme Court decisions, *Seila Law v. Consumer Financial Protection Board*, 140 S.Ct. 2183 (2020), and *Collins v. Yellen*, 141 S. Ct. 1761 (2021).  ECF Nos. 17, 25.  In these decisions, the Supreme Court held that statutory limitations on the President's ability to remove

the one-person head of the challenged Executive Branch agencies violated Article

II separation of powers principles. *Seila Law*, 140 S.Ct. at 2204; *Collins*, 141 S.Ct.

at 1784. Because the Social Security Administration is also an Executive Branch

agency headed by a single individual removable "only pursuant to a finding by the

President of neglect of duty or malfeasance in office," under 42 U.S.C. § 902(a)(3),

Plaintiff asserts these protections also are unconstitutional. Defendant, the Acting

Commissioner of Social Security, agrees. ECF No. 22 at 2 ("The parties agree that

42 U.S.C. § 902(a)(3)violates the separation of powers."). The Department of

Justice has concluded the same. *See* ECF No. 20-1 *Constitutionality of the*

*Commissioner of Social Security's Tenure Protection*, 45 Op. O.L.C. – (July 8,

2021).

Despite the consensus that 42 U.S.C. § 902(a)(3) violates the separation of

powers principles in Article II, the parties disagree over whether this

unconstitutional removal requirement tainted the ALJ's authority to make a

determination regarding Plaintiff's DIB application. ECF Nos. 22, 25. Defendant

makes two valid arguments in asserting that this unconstitutional removal

provision did not void the ALJ's authority to issue a decision: (1) the

Commissioner at the time of the ALJ's appointment was not subject to 42 U.S.C. §

902(a)(3); and (2) even if the Commissioner at the time of the ALJ's appointment

was subject to 42 U.S.C. § 902(a)(3), Plaintiff cannot show that 42 U.S.C. §

902(a)(3)'s removal restriction caused compensable harm. ECF No. 22 at 2-12.

ORDER ~ 4

First, the Commissioner at the time of the ALJ's appointment was not subject to 42 U.S.C. § 902(a)(3). Here, ALJ Laura Valente's appointment was ratified by Acting Commissioner Nancy Berryhill on July 16, 2018, and Acting Commissioner Berryhill approved the appointment as her own.[2] *See* S.S.R. 19-1p. By the very nature of her status as an Acting Commissioner, Berryhill was not subject to the protections of 42 U.S.C. § 902(a)(3). *See Collins*, 141 S. Ct. at 1783 (Holding that the removal restriction was not extended to acting directors). Therefore, the powers deferred to the ALJ upon the July 16, 2018 appointment could not be tainted by the removal protections of 42 U.S.C. § 902(a)(3).

Second, even if the Commissioner at the time of the ALJ's appointment was subject to 42 U.S.C. § 902(a)(3), Plaintiff cannot show that the removal restriction caused the denial of her application for benefits. The Court in *Collins* clearly found that "[a]lthough the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [challenged on appeal] as

---

[2]The Court takes judicial notice of ALJ Laura Valente's appointment as an ALJ prior to the July 16, 2018 ratification of appointment. *See Neff v. Colvin*, No. 1:14-CV-03090-VEB, 2015 WL 2185836, at *1 (E.D. Wash. May 11, 2015) ("On February 13, 2013, a hearing was held before ALJ Laura Valente.").

void." 141 S. Ct. at 1787 (*emphasis* in original). Therefore, if the analysis in *Collins* is extended to the Social Security Administration, which all parties agree it does, there was no constitutional defect in the appointment of the Commissioner. Plaintiff attempts to apply the Supreme Court's ruling in *Lucia v. SEC*, 138 S.Ct. 2044 (2018), that an ALJ's unconstitutional appointment voided her authority to issue a decision and remand to a properly appointed ALJ was required. ECF No. 17 at 6. However, the Court in *Lucia* was addressing a defective appointment, not a defective removal statute. As the Supreme Court clarified, Plaintiff is required to show compensable harm was caused by the unconstitutional removal statute. *Collins*, 141 S. Ct. at 1788-89. Plaintiff alleges that she has established sufficient harm based on President Biden's apparent delay in terminating Commissioner Saul combined with President Biden's comments at the termination criticizing Commissioner Saul for politicizing Social Security benefits and reducing due process protections for appeals hearings. ECF No. 25 at 4-5. However, Plaintiff has not pointed to any lack of due process in this case. Therefore, she has failed to show compensable harm.

Defendant also raises several other reasons for the Court to deny Plaintiff's request for a new hearing based on the constitutional challenge, including the Harmless Error Doctrine, the De Facto Officer Doctrine, the Rule of Necessity, and the Broad Prudential Considerations. ECF No. 22 at 12-19. However, the Court need not address these doctrines because Plaintiff's constitutional challenge fails

on its face.

## SUBSTANTIVE CHALLENGE

In addition to the constitutional challenge, Plaintiff raised a substantive challenge to the ALJ's decision, specifically challenging the ALJ's treatment of her symptom statements.  ECF No. 15.  Here, the Court found that, based on a review of the record as a whole, the ALJ's treatment of her symptom statements was supported by substantial evidence and free of harmful error.

**A.    Background**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 39 years old at the alleged onset date.  Tr. 217.  Plaintiff completed two years of college in 2013.  Tr. 236.  In the fifteen years prior to the application for benefits, Plaintiff's reported a work history includes jobs as a preschool teacher and child care provider.  Tr. 236, 264.  At application, she stated that she stopped working on April 1, 2016, because of her conditions.  Tr. 235. However, Plaintiff alleged that she was self-employed as a childcare provider from July of 2014 through April of 2017.  Tr. 264.  She cared for children from ages six months to five years old for ten hours a day, five days a week and was responsible for supervision of children at all times.  Tr. 265, 275.  Plaintiff stated that she stopped working as a childcare provider following her second back surgery in

April of 2017.  Tr. 64.

**B.    Standard of Review**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing

that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**C.    Five-Step Evaluation Process**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers

from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age,

education and past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the

claimant is capable of adjusting to other work, the Commissioner must find that the

claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not

capable of adjusting to other work, analysis concludes with a finding that the

claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §

404.1520(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v.*

*Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five,

the burden shifts to the Commissioner to establish that (1) the claimant is capable

of performing other work; and (2) such work "exists in significant numbers in the

national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386,

389 (9th Cir. 2012).

**D.    The ALJ Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial

gainful activity since the alleged date of onset, April 1, 2016.  Tr. 17.

At step two, the ALJ found that Plaintiff had the following severe impairments: sacroiliac joint dysfunction, status post left-side SI joint fusion; lumbar degenerative disc disease; migraine headaches; and obesity.  Tr. 17.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 20.

The ALJ then found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> She can lift 20 pounds occasionally and 10 pounds frequently, she can stand and/or walk for a total of two hour and sit for a total of six hours in an eight-hour workday.  She can perform occasional postural activities except that balancing is unlimited and se can never climb ladders, ropes, or scaffolds.  She must avoid concentrated exposure to extreme heat, vibration, loud noise (as a term "loud" is defined by the Department of Labor's Selected Characteristics of Occupations), pulmonary irritants, and hazards.  She can sustain concentration in two-hour increments with usual and customary breaks.

Tr. 21.  At step four, the ALJ found Plaintiff could perform her past relevant work as a school social worker, tutor, and general office clerk.  Tr. 31.

As an alternative to finding Plaintiff ineligible at step four, the ALJ made a step five determination that, considering her age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform, including addresser, final assembler, and document preparer.  Tr. 32-33.

The ALJ found that Plaintiff had not been disabled within the meaning of the

1  Social Security Act at any time from the alleged onset date through the date of the

2  decision.  Tr. 33.

3  **E.    Discussion**

4         Plaintiff challenges the ALJ's decision denying her DIB by challenging the

5  ALJ's treatment of her symptom statements.  ECF No. 15.

6         An ALJ engages in a two-step analysis when evaluating a claimant's

7  testimony regarding subjective pain or symptoms.  "First, the ALJ must determine

8  whether the claimant has presented objective medical evidence of an underlying

9  impairment which could reasonably be expected to produce the pain or other

10  symptoms alleged." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  "The

11  claimant is not required to show that his impairment could reasonably be expected

12  to cause the severity of the symptom he has alleged; he need only show that it

13  could reasonably have caused some degree of the symptom." *Id*.

14         Second, "[i]f the claimant meets the first test and there is no evidence of

15  malingering, the ALJ can only reject the claimant's testimony about the severity of

16  the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

17  rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

18  citations and quotations omitted).

19         The ALJ stated that Plaintiff's statements about intensity, persistence, and

20  limiting effects of her symptoms "are not entirely consistent with the medical

21  evidence and other evidence in the record." Tr. 22.  The then ALJ gave seven

reasons for rejecting Plaintiff's symptom statements:  (1) her providers generally found her to be in no acute distress; (2) her course of treatment was inconsistent with her allegations of migraines; (3) the objective neurological and musculoskeletal findings were not consistent with her allegations of back pain; (4) her treatment history was inconsistent with her allegations of back pain; (5) the treatment records did not support her alleged need for an assistant device; (6) her self-employment as a home-based childcare and early learning program was inconsistent with her alleged symptoms; and (7) her other daily activities were inconsistent with her alleged symptoms.  Tr. 23-28.

The ALJ's first reason for rejecting Plaintiff's symptom statements, that her providers generally found her to be in no acute distress, is not specific, clear and convincing.  An ALJ may cite inconsistencies between a claimant's testimony and the objective medical evidence in discounting the claimant's testimony.  *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).  However, district courts have questioned the applicability of the generic chart note of "no acute distress" to chronic conditions.  *See Toni D. v. Saul*, No. 3:19-cv-820-SI, 2020 WL 1923161, at *6 (D. Or. April 21, 2020) *citing, Mitchell v. Saul*, No. 2:18-cv-01501-GMN-WGC, 2020 WL 1017907, at *7 (D. Nev. Feb. 13, 2020) ("Moreover, the court agrees with Plaintiff that notations that Plaintiff was healthy 'appearing' and in no 'acute' distress do not distract from the findings regarding Plaintiff's chronic conditions."); *Richard F. v. Comm'r of Soc. Sec.*, No. C19-5220 JCC, 2019 WL

1    6713375, at *7 (W.D. Wash. Dec. 10, 2019) ("Clinical findings of 'no acute

2    distress' do not undermine Plaintiff's testimony. 'Acute' means 'of recent or

3    sudden onset; contrasted with chronic.' Oxford English Dictionary, acute (3d ed.

4    December 2011). Plaintiff's impairments are chronic, not acute."). Here, the ALJ

5    found that Plaintiff's reported headaches, low back pain, and obesity were

6    inconsistent with providers finding her to be in no acute distress. However, since

7    Plaintiff suffered from chronic impairments, she would appear in no acute distress

8    unless she was presently experiencing a headache or experiencing an acute

9    increase in back pain. Therefore, the generic chart note of "no acute distress" is

10    not a specific, clear and convincing reason to discount Plaintiff's symptom

11    testimony.

12        The second reason the ALJ provided for rejecting Plaintiff's symptom

13    statements, that her course of treatment was inconsistent with her allegations of

14    migraines, is specific, clear and convincing. The ALJ found that when Plaintiff

15    "saw her primary-care provider in March 2016, just weeks before she alleges she

16    had to stop working due to migraines, she made no report of migraines." Tr. 23.

17    Here, the dates of Plaintiff's employment are inconsistent. Plaintiff's earning

18    records show that she worked away from her home at the Omak School District in

19    2014 and began working in her home in 2015. Tr. 220. She testified that she

20    stopped working in the Omak School District in 2014 due to her migraines. Tr. 58-

21    59. However, at application, she stated that she stopped working on April 1, 2016

1    due to all of her impairments.  Tr. 217.  Therefore, the ALJ's finding that the lack

2    of complaints of migraines in March of 2016, "just weeks before she alleges she

3    had to stop working due to migraines," does not hold the significance the ALJ

4    found that it did because Plaintiff's testimony was that she stopped workout

5    outside the home in 2014 because of her migraines, not 2016.

6         Despite the ALJ's misidentified date, substantial evidence supports the

7    ALJ's determination that her course of treatment was not consistent with

8    headaches at the rate she reported.  She testified that her migraines intensified in

9    2016 to a rate of 12 to 15 migraines a month lasting two to three days each, and

10   that from 2017 to the date of the hearing, she was experiencing migraine symptoms

11   "almost daily."  Tr. 72; *see also* Tr. 73 ("And I always wake up with migraine.

12   Every day I wake up with migraine.").  Plaintiff was seen on June 8, 2016,

13   complaining of a migraine that had lasted six days.  Tr. 351.  She was then seen on

14   June 23, 2016, July 1, 2016, July 26, 2016, and August 16, 2016, with no

15   complaints of migraines.  Tr. 352-56, 397-404.  On August 31, 2016, she again

16   complained of migraines, but stated this felt like her typical migraine which

17   coincide with her menstrual cycle.  Tr. 356.  By November of 2016, Plaintiff again

18   reported that her migraines occurred monthly based on her menstrual cycle.  Tr.

19   360.  On December 16, 2016, Plaintiff reported having a headache the day before

20   and reported "occasional headaches."  Tr. 365.  On December 30, 2016, Plaintiff

21   reported a recent increase in migraines.  Tr. 405-08.  In February and March of

2017, Plaintiff reported that diet change and medications had reduced the frequency of her headaches.  Tr. 415, 420.  On June 14, 2017, Plaintiff reported that her headaches were occurring three times a week or more.  Tr. 374.  However, in July of 2017, Plaintiff reported fewer migraines with verapamil.  Tr. 424.  In October of 2017, Plaintiff reported an increase in migraines when she stopped verapamil.  Tr. 428.  On January 4, 2018, Plaintiff reported 20 headache days a month, which was sufficient to explore Botox injections to treat her symptoms.  Tr. 470.  She received her first Botox injection on January 31, 2018.  Tr. 574.  She reported to the emergency room with a migraine on February 17, 2018.  Tr. 574-78.  In June of 2018, Plaintiff reported that changing her diet had eliminated her migraines.  Tr. 1049.  In July of 2018, Plaintiff reported that she had noted a greater than 50% improvement with her migraines following her Botox injections and taking her medications.  Tr. 1066.  This improvement following Botox continued.  Tr. 1415, 1428.  In June of 2019 she stopped the amitriptyline and experienced a migraine, but her migraines improved after she began taking the medication again.  Tr. 1437.  By October of 2019, she reported an increase in migraines, but these were relieved with medication.  Tr. 1445.

The Court acknowledges that symptoms wax and wane over time and the Ninth Circuit has cautioned ALJs against inferring that improvement makes the Plaintiffs statements unreliable without a doctor or medical expert opining that the claimant's improvement results in an ability to return to work.  *Garrison v. Colvin*,

753 F.3d 995, 1017-18 (9th Cir. 2014).  However, Plaintiff's testimony that she experiences migraines "almost everyday" at the time of the hearing is not consistent with her statements that her migraine frequency reduced by over 50 percent following the Botox injections or that her migraine symptoms are resolved with medications.  Prior to the Botox injections, Plaintiff was experiencing 20 headache days a month, which reduced by 50% after Botox injections.  Therefore, Plaintiff's testimony at the hearing of daily migraines is not supported by her own reports during her course of treatment.  In considering a claimant's symptom statements, the ALJ may consider a claimant's inconsistent statements.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  Therefore, this is a specific, clear and convincing reason to reject Plaintiff's testimony regarding the frequency and intensity of her symptoms.

The third reason the ALJ provided for rejecting Plaintiff's symptom statements, that the objective neurological and musculoskeletal findings are not consistent with her allegations of back pain, is specific, clear and convincing. While it cannot serve as the only reason for rejecting a claimant's testimony, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  Here, the ALJ then cited numerous normal findings on examination throughout the record. Tr. 24. Plaintiff likewise cites to evidence in the record asserting that it supports her complaints. ECF No. 15 at 8-9.  "The court

will uphold the ALJ's conclusion when the evidence is susceptible to more than

one rational interpretation." *Tommasetti*, 533 F.3d at 1038.  Here, the normal

results on examinations include normal strength, Tr. 352, 364, 368, 387, 613, 1338,

normal sensation, Tr. 364, 387,614, 1338, 1361, 1370, normal range of motion, Tr.

368, 1338, 1370 and a negative straight-leg rising test, Tr. 365.  Additionally,  an

electromyogram of her right leg was normal with no evidence of radiculopathy,

plexopathy, or neuropathy.  Tr. 1199.  Therefore, the objective evidence supports

the ALJ's determination that Plaintiff's reported symptoms and limitations

resulting from her spinal impairments are not supported by the objective medical

evidence.  As such, this meets the specific, clear and convincing standard.

The fourth reason the ALJ provided for rejecting Plaintiff's symptom

statements, that her treatment history was inconsistent with her allegations of back

pain, is specific, clear and convincing.  Much like the reports of Plaintiff's

migraines, the records addressing her low back pain demonstrate a waxing and

waning of symptoms, which the ALJ summarized in her decision.  Tr. 24-26.

However, the periods of waxing symptoms resulting in significant limitation were

associated with her surgeries in April of 2017 and January of 2018.  Again, these

records indicated Plaintiff's reports to her providers were inconsistent with the

symptoms reported to the ALJ.  At the hearing, Plaintiff testified that she cannot

stand for more than ten minutes, and she cannot walk more than two blocks

without being unable to walk the next day.  Tr. 79.  However, she regained the

ability to ambulate normally following the second surgery and stated that she could

walk a mile before needing any assistance device within six months of the second

surgery, Tr. 1049.  This is inconsistent with her testimony of being unable to walk

two blocks.  *See Smolen*, 80 F.3d at 1284 (the ALJ may rely on a claimant's

inconsistent statements when addressing her symptom statements).  Therefore, this

meets the specific, clear and convincing standard.

The fifth reason the ALJ provided for rejecting Plaintiff's symptom

statements, that the treatment records do not support her alleged need for an

assistant device, is specific, clear and convincing.  Plaintiff reported that she

required the use of a wheelchair prior to giving birth to her second child and

required the use of a walker after the birth.  Tr. 46.  She then required the use of a

wheelchair for three months followed by three months with a walker following her

first surgery.  Tr. 47.  She then required the use of a wheelchair and walker from

her second surgery until July of 2018.  Tr. 47.  However, this testimony was not

supported in the record.  Less than one month following the first surgery, Plaintiff

reported that she was using crutches for ambulation primarily and only

occasionally used the wheelchair.  Tr. 373.  Less than two months following the

first surgery, Plaintiff attended an appointment without her crutches "because she

feels she has too much going on in her life to be restricted to using assistance

devices."  Tr. 374.  Only nine days after her second surgery, Plaintiff was using a

cane to ambulate at her psychological evaluation.  Tr. 524.  In June of 2018,

Plaintiff reported that she could walk a mile before requiring a walker.  Tr. 1049.

These observations in the record are not consistent with requiring a wheelchair and

walker as Plaintiff reported at the hearing.  Therefore, the ALJ's reason meets the

specific and legitimate standard.

The sixth reason the ALJ provided for rejecting Plaintiff's symptom

statements, that her self-employment as a home-based childcare and early learning

program was inconsistent with her alleged symptoms, is specific, clear and

convincing.  Generally, a claimant's ability to work can be considered in assessing

her symptom statements.  *Bray*, 554 F.3d at 1227.  Here, Plaintiff testified that she

ran a home childcare and early learning program for children requiring special

needs from 2014 to the date of her surgery in 2017.  Tr. 59-64.  She ran the

program from 7:30 am to 5 pm and had six children in her care, including her own

two children.  Tr. 63-64.  This shows that Plaintiff continued to work in her home

after the April 1, 2016, alleged onset date.  The ALJ found that this work activity

was inconsistent with her allegations, including the inability to lift over ten pounds,

the inability to stand for more ten 10 minutes, and the requirement that she retreat

to a dark room for her headaches for hours at a time.  Tr. 28.  Therefore, this

reason meets the specific, clear and convincing standard.

The seventh reason the ALJ provided for rejecting Plaintiff's symptom

statements, that her other daily activities were inconsistent with her alleged

symptoms, is not specific, clear and convincing.  Here, the ALJ found that

Plaintiff's abilities to drive a car, listen to audio books, attend church, do

missionary work, and shop in stores were inconsistent with her reported

limitations.  Tr. 28.  However, the Ninth Circuit has warned ALJs against using

simple household activities against a person when evaluating their testimony:

> We have repeatedly warned that ALJs must be especially cautious in
> concluding that daily activities are inconsistent with testimony about
> pain, because impairments that would unquestionably preclude work
> and all the pressures of a workplace environment will often be
> consistent with doing more than merely resting in bed all day.

*Garrison*, 759 F.3d at 1016.  The activities the ALJ identified are simple household

activities that do not rise to the specific, clear and convincing standard for rejecting

a claimant's symptom statements.

In conclusion, the ALJ provided specific, clear and convincing reasons to

support her determination that Plaintiff's symptom statements were not reliable

and any reasons the ALJ provided that did not meet the specific, clear and

convincing standard amounts to harmless error.  *Carmickle v. Comm'r, Soc. Sec.

Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (upholding an adverse credibility

finding where the ALJ provided four reasons to discredit the claimant, two of

which were invalid); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197

(9th Cir. 2004) (affirming a credibility finding where one of several reasons was

unsupported by the record); *Tommasetti*, 533 F.3d at 1038 (an error is harmless

when "it is clear from the record that the . . . error was inconsequential to the

ultimate nondisability determination").

ORDER ~ 22

## CONCLUSION

Both Plaintiff's constitutional challenge and substantive challenge are not persuasive.  The Court finds that Plaintiff failed to show how the unconstitutional removal provision of 42 U.S.C. § 902(a)(3) resulted in compensable harm. Furthermore, the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, ECF No. 15, is **DENIED**.

2.  Defendant's Motion for Summary Judgment, ECF No. 16, is **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the **Defendant**, and **CLOSE** the file.

**DATED** January 27, 2022.

LONNY R. SUKO
Senior United States District Judge

ORDER ~ 23